UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JUSTIN L. F., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-CV-633-CDL |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **affirms** the Commissioner's decision denying benefits.

**I.     Standard of Review**

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by

---

[1]     Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.  Procedural History

Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a protective Title XVI application for supplemental security income on November 28, 2018. Plaintiff alleges he is disabled due to bipolar disorder, schizophrenia, depression, and anxiety disorder. (R. 202). Plaintiff was 31 years old on the alleged

disability onset date of September 9, 2018. (R. 15). Prior to the onset date, Plaintiff worked as a scraper.[2] The Commissioner denied Plaintiff's application on initial review and on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ).

The ALJ held a hearing on March 13, 2020, at which Plaintiff was represented by counsel. (R. 15). A Vocational Expert (VE) also testified at the hearing. *Id.* On March 31, 2020, the ALJ issued a decision denying disability benefits. (R. 24). On June 4, 2020, the Appeals Council denied Plaintiff's request for review, which rendered the ALJ's decision the agency's final decision. (R. 1). Accordingly, the Court has jurisdiction to review the ALJ's March 31, 2020 decision under 42 U.S.C. § 405(g).

### III. The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404,

---

[2] The ALJ incorrectly identified the job title as scrapper. (R. 23). The VE noted that Plaintiff's work is described as a scraper or burrer. (*See* R. 39).

subpt. P, App'x 1 (Listings). At step four, the claimant must show that his impairment or combination of impairments prevents him from performing his previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id*.

### A. Step One

The ALJ found that Plaintiff is insured through June 30, 2021, and he has not engaged in substantial gainful activity since his alleged disability onset date of September 9, 2018. (R. 17).[3]

### B. Step Two

The ALJ determined that Plaintiff has the following severe impairment: schizoaffective disorder. *Id.*

### C. Step Three

The ALJ determined that Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of a Listing, specifically noting Listings 12.03 (schizophrenia spectrum and other psychotic disorders) and 12.04 (depressive, bipolar and related disorders). *Id.*

---

[3] Plaintiff testified that he worked after his alleged onset date for People Inc. (R. 17, 34). However, based on Plaintiff's earnings, the ALJ found that this work activity did not rise to the level of substantial gainful activity. (R. 17).

The ALJ addressed the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a Listing. *Id.; see* 20 C.F.R. § 404 Subpt. P App'x 1). To satisfy the paragraph B criteria, a claimant's mental impairments must result in at least one extreme or two marked limitations in four areas of functioning. 20 C.F.R. § 404 Subpt. P App'x 1. A marked limitation means that the claimant's functioning in the area independently, appropriately, effectively, and on a sustained basis is seriously limited. *Id.* An extreme limitation means the inability to function independently, appropriately, or effectively, and on a sustained basis. *Id.* Here, the ALJ found that Plaintiff has a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. (R. 18-19). Because Plaintiff does not have at least one extreme or two or more marked limitations, the paragraph B criteria are not satisfied. (R. 19).

The ALJ also discussed the "paragraph C" criteria (for "serious and persistent mental disorders," *see* Listing 12.00A(2)(c)) and determined that they are not satisfied. *Id.* In accordance with these findings, the ALJ proceeded to step four.

### D. Step Four

The ALJ found that Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, with the following nonexertional limitations:

> [Plaintiff can] perform simple repetitive tasks but should have only occasional interaction with supervisors and should not work with the public.

*Id.* The ALJ found that Plaintiff had past relevant work as a scraper, which is categorized as medium exertion level, with Specific Vocational Preparation (SVP) level 2. (R. 23). Citing the VE's testimony as to a hypothetical person with Plaintiff's RFC, the ALJ found that Plaintiff would be able to perform his past work as a scraper, both as actually and as generally performed. *Id.* Accordingly, the ALJ found Plaintiff was not under a disability from September 9, 2018, through the date of his decision, as defined in the Social Security Act. *Id.*

**IV.   Discussion**

Plaintiff asserts two points of error in the ALJ's findings at step four. Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence, because he failed in his duty to adequately develop the record.[4] Plaintiff also challenges the ALJ's finding that his work as a scraper constituted past relevant work. The Commissioner argues that the ALJ's findings at step four regarding Plaintiff's RFC and past relevant work are supported by substantial evidence and free of reversible legal error.

**A.   Mental RFC**

**i.   The ALJ's Decision**

In determining Plaintiff's RFC, the ALJ considered Plaintiff's medical treatment records, prior administrative findings, Adult and Third Party Function Reports, and Plaintiff's hearing testimony. The ALJ's decision cited the office visit with Jack Doney,

---

[4] Plaintiff's RFC challenge is limited to the ALJ's mental RFC determination. (*See* Pl.'s Br., Doc. 13 at 5-10). Accordingly, the discussion herein is focused on the evidence relating to Plaintiff's mental impairments.

6

M.D. in Miami, Oklahoma dated August 2, 2018, when Plaintiff reported that he had been out of his medication for about one month and wanted to restart his medications now that he had insurance. (R. 20 (citing Exhibit 1F)). Dr. Doney also noted the Plaintiff's history of drug and alcohol abuse. *Id.*

The ALJ cited the records from Family and Children's Services in Tulsa, Oklahoma documenting Plaintiff's mental health treatment from September 2018 through April 2019. A mental status examination performed on September 14, 2018 revealed Plaintiff was oriented times four, adequately dressed but disheveled with poor hygiene, cooperative and pleasant, and made eye contact. (R. 20-21). Plaintiff's affect was normal and congruent, his mood was euthymic, and his thought process was goal-directed and logical. (R. 21). Plaintiff denied auditory and visual hallucinations, his memory was intact, and insight and judgment were fair. *Id.* Plaintiff was diagnosed with schizoaffective disorder, depressed type. *Id.* (citing Exhibit 5F, p. 28).

Family and Children's Services records dated September 25, 2018 indicate that Plaintiff complained of "feeling sick," was "shaky", and he "wanted something to reduce his racing thoughts." *Id.* Plaintiff reported feeling "mad about half the time in the last 30 days." *Id.* Plaintiff reported restlessness, sleep disturbance, low energy and motivation, issues with long-term memory and concentration, and auditory hallucinations that "tell me good things." *Id.* Plaintiff denied any intent to act upon the voices and committed to maintaining safety. *Id.* A mental status examination revealed the Plaintiff was a poor historian, providing inconsistent answers throughout intake. *Id.* Plaintiff reported drinking about once a month and a history of methamphetamine and marijuana use, last using

marijuana a couple days prior to the visit. *Id.* Plaintiff reported he had been taking Buspar, Paxil and Risperidone for about four months. *Id.* Plaintiff reported he was not employed and was not looking for a job because "he did not feel right." *Id.* (citing Exhibit 2F, p. 15).

The ALJ also cited the March 22, 2019 records from Family and Children's Services where Plaintiff reported problems with long-term memory and daily concentration. *Id.* Plaintiff denied visual hallucinations and any paranoia or delusions. *Id.* Plaintiff reported he did not have a job and was not looking for one, because he believed his "main responsibility" was taking care of his probation. *Id.* Plaintiff reported his interest in getting disability was because he struggled to perform daily tasks due to depression and stated "I just don't wanna do it." *Id.* Plaintiff reported that his parents paid his bills and fees. *Id.* (citing *Id.*, p. 48). Plaintiff reported that he was isolating himself from friends for the last year and had problems making friends in the last ten years. *Id.* (citing *Id.*, p. 47).

The ALJ further noted the crisis notes from Family and Children Services dated April 17, 2019, which indicated that the Plaintiff's mother reported that (1) she attempted to take Plaintiff to the Tulsa Center for Behavioral Health because the Plaintiff "believed he was bitten by a spider and was now turning into one," and (2) Plaintiff might have been using drugs. *Id.* Plaintiff's mother did not report any suicidal or homicidal ideations and indicated she was taking Plaintiff to a local hospital at his request. *Id.* Counselors recommended the Plaintiff's mother relay her concerns to the hospital psychiatric staff to further assist the Plaintiff. *Id.* (citing *Id.*, p. 32).

The ALJ's decision addressed the prior administrative medical findings from state agency psychologists Joe Kelley, Ph.D. and Stephen Scott, Ph.D., who are "highly

qualified experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1). The ALJ cited the February 21, 2019 opinion of Dr. Kelley where Dr. Kelley opined that Plaintiff "can perform simple tasks with routine supervision," and "relate to peers and supervisors on a superficial work basis," but "cannot relate to the general public." (R. 22-23 (citing Exhibits 1A, 2A)). The ALJ cited the opinion of Dr. Scott, dated July 2, 2019, that Plaintiff "has the ability to understand, remember, and carryout simple and some more detailed instructions with routine supervision," can "relate to supervision and a limited number of coworkers on a superficial work basis," but "cannot effectively relate to the general public." (R. 23 (citing Exhibits 7A, 8A)). The ALJ found the opinions of Dr. Kelley and Dr. Scott partially persuasive.

Regarding Plaintiff's ability to understand, remember, or apply information, the ALJ also considered Plaintiff's statements at the hearing and in his two Adult Function Reports, as well as the Third Party Adult Function Reports completed by his parents. Plaintiff testified that he "had problems remembering things," and his mother had to remind him "to take his medications." (R. 18, 20). In his Adult Function Report, Plaintiff reported that "he could not focus, had paranoid thoughts and was real restless," and that he could not cook because "he forgot things were cooking and would burn them." *Id.* (citing Exhibits 3E, 8E). The ALJ cited the Third Party Adult Function Reports completed by Plaintiff's parents, where they reported that Plaintiff "had problems remembering things and carrying out spoken instructions," he "could not handle finances because he easily los[t] his chain of thought," he "[c]ould pay attention about 10-minutes before becoming distracted," he "loses touch with reality, hallucinates, cannot sit still or focus," and he

9

"could not concentrate and did not understand things even if they were explained to him." (R. 18, 22 (citing Exhibits 4E, 7E)).

Regarding Plaintiff's ability to interact with others, the ALJ again considered Plaintiff's statements both at the hearing and in written reports. Plaintiff testified that "he did not socialize with others[,] with the exception of his parents with [whom] he lived," his "mental impairments kept him froze[sic] up," he "had difficulty" and "became paranoid" around groups of people," he "experienced panic attacks that lasts [sic] about one hour but he could not remember what triggered them," and he "has lived with his mother the last three years." (R. 18, 20). The ALJ noted Plaintiff's statement that "he did not shop in stores," or "socialize with others." (R. 20 (citing Exhibits 3E, 8E)). However, Plaintiff's parents reported Plaintiff "could use public transportation," he "shopped in stores," he sometimes would not "go to church or the grocery store," he "did not interact with others much anymore," and he "had no problem getting along with authority figures." (R. 22 (citing Exhibits 4E, 7E)).

The ALJ also considered statements in the record regarding Plaintiff's ability to concentrate and persist or maintain pace. Plaintiff testified that "his only hobby was watching television and listening to music," and he "had problems hearing voices and seeing shadows," but the voices did not tell him to harm himself or others, and "he did not experience crying spells." (R. 18, 20). In his Adult Function Report, Plaintiff reported "he had problems staying on tasks," he could not work because "he could not focus," he "did not have good sleeping habits, no energy and could not sit still." *Id*. (citing Exhibits 3E, 8E). Plaintiff's daily activities included "eating, taking a shower, watching television,

10

taking a walk, and sitting outside listening to music." *Id.* The Third Party Reports from Plaintiff's parents reported Plaintiff's mental impairment caused "him to feel exhausted, useless and sick," he "complained of no energy," he "could not sit still," and he "talked to himself." However, Plaintiff reportedly "had no problem walking," and "his symptoms improved with medication." (R. 22 (citing Exhibits 4E, 7E)).

As to Plaintiff's ability for adapting or managing himself, the ALJ cited Plaintiff's hearing testimony that he has "no problem caring for personal hygiene," and "he has the ability to cook and clean around the house, but his mother does all of the chores now." (R. 19-20). In his Adult Function Report, Plaintiff reported "he did not have any problems with personal care," he "did not drive," he "did not shop in stores," he "could count change but could not handle household finances," and he "assisted his father with performing household chores, outdoor chores and repairs around the house." (R. 20 (citing Exhibits 3E, 8E)). Plaintiff's parents reported that Plaintiff helped his father "with things around the house such as cleaning the house, mowing the lawn and minor repairs," and he "cared for household pets." (R. 19, 22 (citing Exhibit 4E)). Plaintiff's "mother reminded him of appointments and when to take his medications," but he "could perform small tasks like vacuuming, taking the trash out and helping mow" and "did not require assistance with personal care," although he "did not cook" or drive, and he "no longer performed his hobbies of fishing and socializing with others." *Id.* (citing Exhibits *id.*, 7E)).

Considering the foregoing evidence, the ALJ determined that Plaintiff retains the RFC for work involving simple repetitive tasks, only occasional interaction with supervisors, and no working with the public.

11

### ii. Plaintiff's Arguments

The Plaintiff argues that the ALJ's mental RFC findings are deficient because (1) evidence of Plaintiff's mental health hospitalizations was not included in the record the ALJ considered when making his RFC determination, (2) the ALJ failed to order a mental consultative examination, and (3) the ALJ did not ask any questions regarding Plaintiff's mental impairments at the hearing. (*See* Pl.'s Br., Doc. 13 at 5).

### *Missing Mental Health Hospitalization Records*

"The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *Branum v. Barnhart,* 385 F.3d 1268, 1271 (10th Cir. 2004). The administrative hearing is nonadversarial, but the ALJ is responsible for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). "The duty to develop the record is limited to 'fully and fairly develop[ing] the record as to material issues.'" *Hawkins v. Chater,* 113 F.3d 1162, 1168 (10th Cir. 1997) (quoting *Baca v. Department of Health & Human Servs.*, 5 F.3d 476, 479–80 (10th Cir. 1993)). However, in cases like this one where the Plaintiff was represented by counsel at the hearing, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored," and the ALJ "may ordinarily require

counsel to identify the issue or issues requiring further development." *Hawkins*, 113 F.3d at 1167.

Plaintiff's brief specifically points to the September 14, 2018 progress note from Family and Children's Services where he mentions prior hospitalizations "most recently 1 ½ years ago, but was first hospitalized 3 years ago and was hospitalized several times within that year" at the Crisis Care Center at Tulsa Center for Behavioral Health (TCBH). (*See* Pl.'s Br., Doc. 13 at 7; *see also* R. 340). However, the ALJ is only required to develop the Plaintiff's medical history for the twelve months preceding the month in which he filed his application "unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application." *See* 20 C.F.R. § 416.912(b)(1).

Here, Plaintiff filed his application on November 28, 2018. The hospitalizations Plaintiff referred to 1 ½ and 3 years prior to the September 14, 2018 progress note are more than twelve months preceding his application date. Further, the undersigned notes that a letter was sent to TCBH requesting medical records for the period of September 2016 to January 18, 2019 (date of the letter), and TCBH responded that no records were available for that timeframe. (R. 374). Thus, the hospitalizations Plaintiff referred to as 1 ½ to 3 years prior to September 14, 2018 appear to have been further in the past than the timeframe of his recollection. Further, Plaintiff has not shown that the inclusion of hospitalization records beyond the twelve-month scope of medical history required by the ALJ to develop would have further assisted the ALJ or altered his decision.

Furthermore, during the hearing, Plaintiff's counsel never indicated or suggested that there were any missing hospital records from the administrative record. On the contrary, the ALJ specifically asked Plaintiff's counsel at the hearing whether the record was complete, and Plaintiff's counsel responded "[i]t is Judge." (R. 32). The ALJ also asked Plaintiff's counsel whether he had any objections to any of the records and Plaintiff's counsel responded "[n]o objection." *Id.* For Plaintiff to now claim the ALJ failed to develop the record due to missing hospital records ignores his counsel's representation that the record was complete at the time of the hearing. Moreover, Plaintiff and his counsel "are in the best position to have knowledge of any additional medical records that may be relevant to [his] disability claim." *Hendron v. Colvin*, 767 F.3d 951, 957 (10th Cir. 2014). Plaintiff's argument has no merit because the ALJ reasonably assumed the record was complete based on the statements from Plaintiff's counsel.

Therefore, remanding this case for further development to include Plaintiff's hospitalization records is not warranted. Accordingly, the Court finds that the absence of Plaintiff's hospitalization records in the administrative record does not constitute reversible error.

### *ALJ's Failure to Order a Consultative Examination*

Plaintiff argues the "medical record is replete with substantial evidence of his mental disability," which should have prompted the ALJ to further investigate the extent of those mental impairments. (*See* Pl.'s Br., Doc. 13 at 5 (citing R. 253-268, 278-285)). Specifically, Plaintiff claims the existing record clearly establishes that his mental impairments cause auditory hallucinations, command voices, fatigue, and problems with

concentration and memory; therefore, a consultative examination is needed to determine the limiting effects from those impairments. *Id.* at 10.

"The Secretary has broad latitude in ordering consultative examinations." *Hawkins*, 113 F.3d at 1166 (quoting *Diaz v. Sec'y of Health & Hum. Servs.*, 898 F.2d 774, 778 (10th Cir. 1990)). In *Hawkins*, the Tenth Circuit identified instances when a consultative examination is often required, such as "where there is a direct conflict in the medical evidence requiring resolution," "where the medical evidence in the record is inconclusive," and "where additional tests are required to explain a diagnosis already contained in the record." *Id.* at 1166; *see also* 20 C.F.R. § 404.1519a(b). Further, in cases where the Plaintiff was represented by counsel at the hearing, "the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development," and "[i]n the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record." *Hawkins*, 113 F.3d at 1167-68.

Here, Plaintiff has not identified a direct conflict in the medical record, and neither did the Court in its review of the record. Plaintiff fails to show that the available record was inconclusive with respect to the functional impact of his mental impairments. To the contrary, as noted *supra*, medical treatment evidence and subjective statements indicate that, despite his symptoms, Plaintiff can go shopping and use public transportation by himself and is capable of performing household chores but chooses not to because he "just doesn't wanna do it." (R. 21). Furthermore, the record indicates that Plaintiff continued to use marijuana, and that he failed to apply for jobs because he "did not feel right." *Id.*

15

Additionally, examination notes from Family & Children's Services in September 2018 reflect a largely normal mental status examination. (*See* R. 23).

Finally, the ALJ's decision relied in part on the opinions of state agency reviewing psychologists who reviewed Plaintiff's records and determined that the existing record is sufficient to determine Plaintiff's RFC. *See id.*  Further, the Court cannot reverse a determination by the ALJ that is supported by substantial evidence—such as here—based on mere speculation, and without any identifiable deficiency in the existing record. *See Hawkins*, 113 F.3d at 1167.  As set forth above, there was adequate information in the administrative record for the ALJ to decide Plaintiff's claim; therefore, the ALJ's duty to further develop the record by ordering a consultative examination was not warranted. Accordingly, there was no reversible error in the ALJ's failure to order a consultative examination.

### *ALJ's Failure to Ask Questions*

Plaintiff argues that the ALJ failed in his duty to develop the record at the hearing because he did not ask any questions about Plaintiff's mental impairments, the extent of his mental impairments, or his daily activities.  At the hearing, the ALJ asked Plaintiff about his personal history and background, his past work, and the requirements needed to perform his past work before turning the questioning over to Plaintiff's counsel. (*See* R. 33-36).  The ALJ questioned the VE about Plaintiff's ability to work using different hypothetical scenarios.  (*See* R. 39-40).  Based on the VE's testimony, the ALJ asked Plaintiff follow-up questions regarding his interaction with coworkers in his past work. (*See* R. 40-41).

Plaintiff's counsel questioned Plaintiff about his mental impairments, how they affect his functional abilities and ability to work, and the effect his impairments have on his activities of daily living. (*See* R. 36-39). Plaintiff's counsel then stated "I don't have any other questions, Judge." (R. 39). Plaintiff's counsel declined the opportunity to question the VE, to offer anything else for the ALJ to consider, or to give a closing statement. (*See* R. 41). Plaintiff now claims the ALJ did not conduct an adequate hearing and that the ALJ denied his claim based on the "absence of evidence." (*See* Pl.'s Br., Doc. 13 at 8). The Court finds that Plaintiff's arguments have no merit.

An ALJ is not required to "exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment." *Hawkins*, 113 F.3d at 1168. Here, the ALJ gave Plaintiff's counsel and Plaintiff every opportunity to present their case at the hearing and Plaintiff's counsel assured the ALJ that he had no more questions and the record was complete.

On the existing record, the Court finds that the ALJ did not err in failing to ask more questions, and the ALJ reasonably relied on statements from Plaintiff's counsel that no further questions were necessary and the record was complete. "[T]he ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present [the] claimant's case in a way that the claimant's claims are adequately explored," and the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins*, 113 F.3d at 1167. Here, the ALJ's decision reflects a reasonable determination that the record contained adequate information to decide Plaintiff's claim without further questioning about Plaintiff's mental impairments.

### B. Past Relevant Work

Plaintiff challenges the ALJ's finding that his work as a scraper constituted past relevant work. Specifically, Plaintiff contends there is no substantial evidence that his past work as a scraper for Peoplelink (a temporary agency) was of sufficient duration to meet the substantial gainful activity earnings threshold. Plaintiff claims the ALJ failed to elicit sufficient evidence about whether all of Plaintiff's work at Peoplelink was performed as a scraper. Plaintiff claims this error is material because his Detailed Earnings Record shows that most of the work for Peoplelink was not performed at substantial gainful activity levels. (*See* Pl.'s Br., Doc. 13 at 8-10).

Past relevant work is defined as work that a claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). Plaintiff testified at the hearing that he worked for Peoplelink cleaning pipes in a pipe yard for "almost two years." (R. 34). The ALJ asked Plaintiff's counsel to confirm that Plaintiff's work with Peoplelink "looks like that'd be his past relevant work, right," and Plaintiff's counsel responded "[t]hat's correct, Judge." (R. 36). The VE testified that Plaintiff's description of his work cleaning pipe describes a "Scraper or Burrer", which is categorized as medium exertion level, with SVP level 2. (R. 39). Jobs with SVP of 2 take "[a]nything beyond short demonstration up to and including 1 month" to learn. *See* DOT, App. C, § II, 1991 WL 688702. Therefore, Plaintiff's testimony that he worked for "a couple years doing this pipe cleaning" is substantial evidence that he worked for the duration required to learn the job. (R. 36).

Plaintiff's argument that his earnings as a scraper for Peoplelink fail to meet the substantial gainful activity earning threshold is also contradicted by the record. Plaintiff's earnings records show that he worked for Peoplelink in seven different calendar years.[5] Although Plaintiff's wages with Peoplelink varied over those years, he earned $12,054.40 in 2006. Thus, Plaintiff's earnings in 2006 exceeded the substantial gainful activity monthly threshold amount of $860.00 ($860 x 12 months = $10,320.00).[6] Therefore, the ALJ's findings that Plaintiff's past work as a scraper constitutes past relevant work is supported by substantial evidence.

## V. Conclusion

For the reasons set forth above, the Court finds the ALJ's decision is supported by substantial evidence and that the ALJ applied the correct legal standards. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is **affirmed**.

**SO ORDERED** this 13th day of May, 2022.

_Christine D. Little_
Christine D. Little
United States Magistrate Judge

---

[5] Plaintiff had the following earnings for Peoplelink: $3,425.00 in 2005, $12,054.40 in 2006, $1,281.00 in 2007, $1,236.89 in 2008, $2,226.03 in 2011, $979.20 in 2013, $3,255.05 in 2014, and $1,764.45 in 2015. (R. 227-230).

[6] See https://www.ssa.gov/oact/cola/sga.html.